VALENTI LAW APC
Matthew D. Valenti (SBN 253978)
E-mail: mattvalenti@valentilawapc.com
10174 Austin Drive #1116
Spring Valley, CA 91979
Phone: (619) 540-2189

Attorney for Shonna Counter

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHONNA COUNTER,<br><br>Plaintiff,<br><br>vs.<br><br>ADVANCED REHAB THERAPY, INC.; LAWNDALE PET HOSPITAL PLAZA LLC and DOES 1-10,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>DENIAL OF CIVIL RIGHTS AND ACCESS TO PUBLIC FACILITIES TO PHYSICALLY DISABLED PERSONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, (42 U.S.C. §12101, *et seq.*) AND THE UNRUH CIVIL RIGHTS ACT, (CALIFORNIA CIVIL CODE §51, *et seq.*)<br><br><u>DEMAND FOR JURY TRIAL</u> |

> *"[T]he continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."* 42 U.S.C. §12101(a)(8).

> *"It is the policy of this state to encourage and enable individuals with a disability to participate fully in the social and economic life of the state ..."* California Government Code §19230(a).

Plaintiff SHONNA COUNTER (hereinafter referred to as "Plaintiff") complains of ADVANCED REHAB THERAPY, INC., a California corporation doing business as MOTION PLUS AQUATIC AND THERAPY CENTER; LAWNDALE PET HOSPITAL PLAZA LLC, a California limited liability company; and DOES 1-10, (each, individually a "Defendant" and collectively "Defendants") and alleges as follows:

## I. PARTIES

1. Plaintiff SHONNA COUNTER is a California resident and a qualified physically disabled person. Plaintiff has Spinal Muscular Atrophy, a rare, recessive, progressive, degenerative neuromuscular disorder. This condition weakens her muscle strength significantly, limiting or impairing her ability to walk. She uses a powered wheelchair for mobility and from her wheelchair she independently drives an adapted vehicle with a passenger side ramp. Plaintiff is a member of a protected class of individuals guaranteed rights under state and federal law. Plaintiff prides herself on her independence and on empowering other disabled people to be independent.

2. Defendants ADVANCED REHAB THERAPY, INC., LAWNDALE PET HOSPITAL PLAZA LLC. and DOES 1-10, are and were the owners, operators, lessors and/or lessees of the subject business, property, and facility at all times relevant in this Complaint.

3. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including DOES 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

4. Defendants own and owned the property located at 14708 Hawthorne Blvd, Lawndale, CA 90260 ("Subject Property") at all relevant times.

5. Defendants operate and operated a physical therapy center doing business as MOTION PLUS AQUATIC AND THERAPY CENTER ("physical therapy center"), located at the Subject Property, at all relevant times.

6. Plaintiff alleges that the Defendants have been and are the owners, franchisees, lessees, general partners, limited partners, agents, trustees, employees, subsidiaries, partner companies and/or joint ventures of each of the other Defendants, and performed all acts and omissions stated herein within the course and scope of such relationships causing the damages complained of herein.

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (a)(4) for violations of the Americans with Disabilities Act of 1990, U.S.C. §12101, *et seq*.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising out of the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. U.S.C. §1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

## III. FACTS

10. Ms. Counter uses a wheelchair for mobility.

11. Defendants' business is open to the public, a place of public accommodation, and a business establishment.

12. Ms. Counter received a referral from her healthcare provider to the physical rehabilitation center, and went there for an appointment on or around November 5, 2025.

13. When Plaintiff viewed the location online, she could see there were only stairs at the front door, but she went to her appointment anyway, in case there was a rear entrance. There was no International Symbol of Accessibility or any sign indicating an accessible entrance visible near the front door. When Plaintiff arrived for her appointment, the only disabled stall available was located on an angle with a non-compliant access aisle. If Plaintiff were to park in this space, she would be unable to deploy her van's ramp. Unable to use this ostensibly marked disabled stall, Plaintiff was forced to park diagonally over two standard spaces. Parking this way can cause frustration and anxiety for disabled persons because they frequently encounter uneducated people who tell them they cannot park in this manner although it is lawful.

14. After parking, Plaintiff made her way to the rear entrance of Motion Plus. The back entrance has a ramp which leads to a door which is very heavy, making it extremely difficult for weaker persons with disabilities to enter or exit the physical rehabilitation center. Plaintiff could not enter the business independently. As Plaintiff struggled to enter the facility, another patient helped her with the heavy door. The door seemed to close quickly, and Plaintiff needed

the stranger to keep the door open to ensure she could get completely inside the facility before the door closed on her.

15. Once inside, Plaintiff noticed the interior doors were all propped open obscuring the paths of travel narrowing the required minimum clear width of the paths of travel making it difficult for Plaintiff to navigate through the physical therapy center.

16. When Plaintiff navigated to the front desk, she discovered there was no space in the waiting area to fill out her paperwork, so she had to wait for someone to come remove one chair.

17. Once inside the exam room, there wasn't any equipment to lift her onto the exam table.

18. During her exam the doctor recommended she have one day per week on land for stretching and one day per week in the water for strengthening. As Plaintiff was leaving the doctor mentioned, "Oh, I almost forgot, we have three or four steps to get in the pool. You can do those, right?" or words to that effect. Plaintiff responded, "Um, no! I figured you have a lift." The doctor responded, "No, we don't have one of those, but we can help you get in and out of the pool." Plaintiff explained that she would need to be completely bearhugged and lifted step by step. The doctor replied, "We can see if it works if you want." or words to that effect. Plaintiff then asked if they could install a pool lift, noting that there are portable ones available. The doctor responded, "I don't know about that, but some of our other patients decide if they want to at least try it out."

19. After this exchange they decided Plaintiff would start on land therapy while they resubmitted Plaintiff's authorization because the aquatic code was missing. Plaintiff asked if their Long Beach physical therapy location had a pool lift and was told that the Long Beach location did not have a pool.

20. Plaintiff called the following week and left a voice message explaining she recently had an excision and had stitches on her back and wasn't

sure if it was okay to begin her land therapy or if she should reschedule until her stiches were removed.

21. The employee, Grace, called Plaintiff back and asked, “So, about this aquatic referral, do you want to try using the steps? We weren't sure how you wanted to proceed.” Plaintiff explained that she had called regarding her stiches and said she’d assumed Motion Plus would get a lift by the time her authorization came through. Grace replied, “Well, I don't think that is going to happen but if you want to at least try the stairs, it's up to you.” or words to that effect. Plaintiff responded. “I know I can’t do steps.” Grace replied, “Ok then, we can refer you to a place that has a pool lift.” To which Plaintiff asked, “Oh, ok, where is that place?” “Oh, I don’t know; we just send the referral back.” Plaintiff realized they would not be sending her to a place where they knew they would have a pool lift. Motion Plus would just be sending the referral back to her insurance company. Grace confirmed this and added, “We can’t treat every kind of person.” To which Plaintiff replied, “Right, but you're turning me away because you don't have a lift, not for a lack of skillset.” “That’s right” replied Grace. “Usually, we tell patients before coming in that they have to be able to do at least three or four steps.” Plaintiff explained that no one had mentioned that to her. Grace replied, “Well, it's your responsibility to ask if you need a lift.” or words to that effect.

22. Plaintiff knew she would be placed at unnecessary risk of physical injury if she were to allow employees of Motion Plus to attempt to transfer her into and out of the pool for every aquatic visit. Plaintiff has heard of many wheelchair users being “helped” by others who have become permanently injured due to being dropped or handled incorrectly. For these reasons, Plaintiff agreed to have the referral sent back to her insurance company.

23. Frustrated and feeling disrespected by the policies and procedures of Motion Plus, Plaintiff was deterred from receiving physical therapy at Motion Plus because she was unable to navigate the stairs into and out of the pool.

24. The difficultly, discomfort, and embarrassment Plaintiff experienced as she attempted to receive her physical therapy led her to feel that Defendants are unwelcoming to disabled customers and disregards their accessibility needs. It was especially frustrating to be referred to an aquatic therapy center for only to learn that the pool has been rendered inaccessible by Defendants.

25. It is clear that Motion Plus Aquatic and Therapy Center has discriminatory policies, practices, and procedures of refusing to provide the required accessible entries into their pool, rendering aquatic therapy useless to persons with disabilities unless they are willing to place their safety completely in the hands of Motion Plus's employees.

26. Defendant's discriminatory policies, practices, and procedures require disabled wheelchair users, including Plaintiff, to place themselves at risk of personal injury as they are encouraged to try navigating pool steps even when told it would be impossible and dangerous for Plaintiff to make such an attempt.

27. Because of these entirely preventable policies, practices, and procedures, Plaintiff did not have full and equal access to Motion Plus Aquatic and Therapy Center and its facilities.

28. This lawsuit is the result of Defendant's disregarding their accessibility obligations under the law.

29. During Plaintiff's visit, Defendants did not offer persons with disabilities equivalent facilities, privileges, advantages, and accommodations offered to other persons.

30. Plaintiff encountered discriminatory policies, practices, and procedures that interfered with and denied Plaintiff the ability to use and enjoy the goods, services, privileges, advantages, and accommodations offered by Defendants at the Subject Property. These policies, practices, and procedures violate the Americans with Disabilities Act.

31. These discriminatory policies, practices, and procedures are enacted and followed by Defendants in the ordinary course of business, not in response to isolated or temporary interruptions in service or access due to maintenance or repairs.

32. The discriminatory policies, practices, and procedures create barriers to accessibility for their disabled customers such as Plaintiff.

33. The discriminatory policies, practices, and procedures existed during Plaintiff's visit to Motion Plus Aquatic and Therapy Center. Plaintiff personally encountered these discriminatory policies and procedures.

34. These discriminatory policies, practices, and procedures denied Plaintiff full and equal access and caused her difficulty, discomfort, and embarrassment. Because she was afraid for her safety if she followed Defendant's policy of having disabled patients attempt to navigate the pool without a lift (even with assistance) Plaintiff was forced to have her referral sent back to her insurance company and have her treatment delayed. Having an aquatic therapy center whose pool was intentionally made unavailable to her was extremely frustrating. Being told it is her responsibility to anticipate Defendant's refusal to follow the ADA and expecting her to ask if they were compliant was also extremely frustrating and degrading. The conversations she had with the employees of Motion Plus also led her to feel that Defendants are unwelcoming to disabled customers and disregard their accessibility needs.

35. During Plaintiff's visit, Defendants did not offer persons with disabilities equivalent facilities, privileges, advantages, and accommodations offered to other persons.

36. Plaintiff encountered barriers that interfered with and denied Plaintiff the ability to use and enjoy the goods, services, privileges, advantages, and accommodations offered by Defendants at the Subject Property.

37. These barriers violate one or more standards of the Americans with Disabilities Act ("2010 ADA") and/or the California Building Codes ("2025 CBC").

38. Parking for patrons visiting the Subject Property is among the facilities, privileges, advantages, and accommodations offered by Defendants.

39. According to the U.S. Department of Justice, "a public accommodation's first priority should be to enable individuals with disabilities to physically enter its facility. This priority on 'getting through the door' recognizes that providing physical access to a facility from public sidewalks, public transportation, or parking is generally preferable to any alternative arrangements in terms of both business efficiency and the dignity of individuals with disabilities." ADA Title III Technical Assistance Manual §III-4.4500.

40. When parking is provided, there must be at least one accessible parking space designated and marked for disabled persons. Where more than one parking facility is provided on a site, the number of accessible spaces provided on the site shall be calculated according to the number of spaces required for each parking facility. 2010 ADA §502 et seq.; 2010 ADA §208.2; 2025 CBC 11B-502 et seq; 2025 CBC 11B-208.2.

41. However, there is no accessible parking for disabled persons at the Subject Property because there are insufficient accessible parking spaces designated for disabled persons and/or the existing ostensibly designated space or spaces are significantly noncompliant with the applicable ADA and CBC standards.

42. Rehabilitation facilities and outpatient physical therapy facilities are required to dedicate twenty percent of its parking to disabled stalls. This outpatient physical therapy facility has less than the required number of disabled parking stalls. 2010 ADA §208.2.2; 2025 CBC 11B-208.2.2.

43. There are three ostensibly marked disabled stalls available at the Subject Property. The first disabled parking stall is near the road and has a triangular shaped non-compliant access aisle. This accessible parking space's adjacent access aisle did not say, "No Parking,". ADA 2010 §502.3.3; 2025 CBC 11B-502.3.3; 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

44. This access aisle is also less than the required width for an accessible space. Adjacent access aisles are required to be 60 inches wide minimum. Access aisles are also required to extend the full length of the parking stall they serve. ADA 2010 §502.3.1; ADA 2010 §502.3.2; ADA 2010 §502.6; 2025 CBC 11B-502.3.2; 2025 CBC 11B-502.3.3; 2025 CBC 11B 502.6; 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

45. The adjacent access aisle must be clear of obstructions. The non-compliant triangular shaped access aisle had and has garbage cans located within it. ADA 2010 §502.3; 2025 CBC 11B-502.3; 2025 CBC 11B-108.

46. There is no ADA compliant parking signage. The first disabled stall has no parking sign whatsoever. The second disabled stall has no parking sign at the head of the stall but does have a non-compliant sign at the head of the access aisle. This sign is lower than the required height. The third disabled stall also has a sign which is posted lower than the height required. Posting the sign too low makes it difficult for drivers to see the sign from their car. This makes it more likely non-disabled clients of the therapy center will accidentally park in the disabled stall rendering the space unusable by disabled clients. ADA 2010 §502.6; 2025 CBC 11B-502.6; 2025 CBC 11B-703.7.2.1.

47. There is no sign in a conspicuous place at the entrance to the facility, or immediately adjacent to on-site accessible parking and visible from each parking space, stating that vehicles parked in designated accessible spaces not displaying a disabled placard or license plate will be towed. 2025 CBC 11B-502.8.

48. There are two possible routes to the main entrance of the facility. Each route has an access barrier making them inaccessible to persons with disabilities such as Plaintiff.

49. There is no accessible route from the parking area or the public right of way to the front entrance of Motion Plus Aquatic and Therapy Center. The existing route has a set of three steps with no ramp or wheelchair lift provided. The second route leads to the back entrance of the facility. This entrance has a heavy door which makes accessing the rear entrance difficult or impossible for disabled patients of the rehabilitation center. 2010 ADA §206; 2010 ADA §303.2; 2010 ADA §403.4; 2025 CBC 11B-206; 2025 CBC 11B-303.2; 2025 CBC 11B-403.4; 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

50. Neither of the entrances to the rehabilitation facility are accessible. When two or more entrances are provided at least sixty percent must be accessible. 2010 ADA §206.4.1; 2025 CBC 11B-206.4.1.

51. The front entrance contains three steps with no ramp or wheelchair lift provided. 2010 ADA §206; 2010 ADA §303.4; 2010 ADA §403.4; 2025 CBC 11B-206; 2025 CBC 11B-303.4; 2025 CBC 11B-403.4.

52. The back entrance has a ramp which leads to a door which is very heavy, making it extremely difficult for weaker persons with disabilities to enter or exit the physical rehabilitation center. Plaintiff could not enter the business independently. The door also seemed to close quickly on Plaintiff, and she needed assistance to keep the door open as she passed through the rear entrance into the physical therapy center. Door opening force and closing speeds shall comply with ADA 2010 §404.2.8 and 2010 ADA §404.2.9. 2010 ADA §404.2.8; ADA 2010 §404.2.9; 2025 CBC 11B-404.2.8; 2025 CBC 11B-404.2.9.

53. Even if there was an accessible entrance, there is no directional signage directing disabled patients to an accessible entrance from the main entrance of Motion Plus Aquatic and Therapy Center or from the public right of

way. 2010 ADA §216.1; 2010 ADA §216.4.3; 2010 ADA §216.6; 2025 CBC 11B-216.1; 2025 CBC 11B-216.4.3; 2025 CBC 11B-216.6.

54. There is no sign containing the International Symbol of Accessibility on either door of the therapy center letting disabled customers know there is an accessible entrance and accessible parking available. 2010 ADA §216.6; 2025 CBC 11B-216.6.

55. Once inside, Plaintiff noticed the interior doors were all propped open obscuring the paths of travel and narrowing the required 36-inch minimum clear space. This created many access barriers for Plaintiff as she traveled through the interior of the facility. ADA 2010 §403.5.1; CBC 11B-403.5.

56. Defendants have placed unsecured movable mats throughout the interior of the physical therapy center, which creates access barriers for persons using a wheelchair such as Plaintiff. Mats are required to be secured to the floor to provide a stable, firm, and slip resistant surface. ADA 2010 §302.1; ADA 2010 §302.2; 2025 CBC 11B-302.1; 2025 CBC 11B-302.2.

57. Defendants have failed to provide an accessible means of entry for their swimming pool. At least two accessible means of entry shall be provided for swimming pools. Accessible means of entry shall be swimming pool lifts complying with ADA 2010 §1009.2; sloped entries complying with ADA 2010 §1009.3, or transfer walls complying with ADA 2010 §1009.4; transfer systems complying with ADA 2010 §1009.5; and pool stairs complying with ADA 2010 §1009.6. At least one accessible means of entry provided shall comply with ADA 2010 §1009.2 or ADA 2010 §1009.3. ADA 2010 §242.1; ADA 2010 §242.2; 2025 CBC 11B-242.1; 2025 CBC 11B-242.2.

58. The photos below show one or more of these violations.


















59. The barriers existed during Plaintiff's visit to the Subject Property. Plaintiff personally encountered these barriers.

60. These inaccessible conditions and barriers denied Plaintiff full and equal access and caused her difficulty, discomfort, and embarrassment. Because of the lack of compliant parking, Plaintiff was forced to park diagonally across two standard stalls and risk an unpleasant encounter with someone as to her lawful right to park in such a manner. She was also at greater risk of being hit by a car while transferring to and from her wheelchair. Because of the lack of a compliant path route, she was unable to enter the facility independently and had to rely on the kindness of a stranger to offer assistance. While Plaintiff is grateful to others for offering their help, it is embarrassing and degrading to require assistance and have her independence taken away from her. Because of the lack of compliant route within the facility, Plaintiff had more difficulty navigating throughout the interior

of the center. Because of the lack of compliant entrances to the pool, Plaintiff was denied water therapy at Motion Plus Aquatic and Therapy and had to prolong her wait for rehabilitative therapy while her referral was eventually sent back to her insurance company. Defendant's discriminatory policies, practices, and procedures require disabled wheelchair users to be willing to place themselves at risk of personal injury as they are encouraged to try navigating pool steps. Plaintiff was encouraged "to at least try" even when told it would be impossible and dangerous for Plaintiff to make such an attempt. Because of the discriminatory policies and procedures of Motion Plus, Plaintiff was treated with disrespect and would have risked her physical safety if she complied with Defendant's risky practices and procedures.

61. These discriminatory policies, practices, and procedures and barriers denied Plaintiff full and equal access due to her disability because, *inter alia*, they caused Plaintiff anxiety, difficulty, discomfort, and embarrassment, which patrons who do not use a wheelchair for mobility do not suffer when they access the Subject Property.

62. Plaintiff intends to return to the Subject Property in the near future for physical therapy. Plaintiff is currently deterred from returning because of the knowledge of the discriminatory policies, practices, and procedures that relate to Plaintiff's disabilities which continue to exist at Defendant's public accommodation facilities.

63. Plaintiff has Article III standing because she visited for physical therapy. She has ongoing medical issues and her disability is degenerative; Plaintiff will be referred to PT multiple times as her condition progresses. The Subject Property is conveniently located and in the general area where Plaintiff lives, shops, goes to medical appointments, visits family and friends, recreates, and does other normal activities in her daily life. Plaintiff intends to return to Motion Plus Aquatic and Therapy in the near future for land and water therapy, after the

discriminatory policies, practices, and procedures alleged herein have been removed.

64. Plaintiff alleges that Defendants knew that the discriminatory policies, practices, and procedures prevented equal access. Plaintiff further alleges that Defendants had actual or constructive knowledge that the discriminatory policies, practices, and procedures prevented equal access, and that the noncompliance with the Americans with Disabilities Act was intentional. Plaintiff further alleges that Defendants had actual or constructive knowledge that the architectural barriers prevented equal access, and that the noncompliance with the Americans with Disabilities Act and Title 24 of the California Building Code regarding accessible features was intentional.

65. Defendant's refusal to change their discriminatory policies, practices, and procedures is in violation of the law, and willfully deprives disabled persons including Plaintiff of important civil rights.

66. Defendant's discriminatory policies, practices, and procedures to deny disabled customers an accessible pool in a rehabilitation center named after their aquatic program are intentional. During all relevant times, Defendants had authority, control, and dominion over the use of their facilities and over their employees' training, instruction, and acts in furtherance of Defendant's business. Therefore, the discriminatory policies, practices, and procedures to deny disabled customers an accessible pool are not a mishap, but rather an intentional act.

67. Defendants have obstructed or failed to maintain, in working and useable conditions, those features necessary to provide ready access to persons with disabilities. "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. §36.211(a); 2025 CBC 11B-108.

68. The State of California Department of General Servicers, Division of the State Architect (DSA) provides commentary to 2025 CBC 11B-108 as follows:

> Features for accessibility must be permanently functional, unobstructed and may not be removed. It is not sufficient to provide features such as accessible routes, parking, elevators, ramps or signage if those features are not maintained in a manner that enables individuals with disabilities to use them.

DSA, 2019 California Access Compliance Advisory Reference Manual, p.84.

69. Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their property more accessible to their mobility impaired customers. The United States Department of Justice has identified that these types of barriers are readily achievable to remove.

70. To date, Defendants refuse to remove these barriers, in violation of the law, willfully depriving disabled persons including Plaintiff of important civil rights.

71. On information and belief, Plaintiff alleges that the Defendants' failure to remove these barriers was intentional because the barriers are logical and obvious. During all relevant times Defendants had authority, control, and dominion over these conditions and therefore the absence of accessible facilities was not a mishap, but rather an intentional act.

72. The barriers to access are listed above without prejudice to Plaintiff citing additional barriers to equal access by an amended complaint after inspection by Plaintiff's Certified Access Specialist (CASp). *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiff, are barriers Plaintiff may encounter when he returns to the premises. All public accommodations must

be brought into compliance with all applicable federal and state accessibility requirements.

**FIRST CAUSE OF ACTION**

Violation of the Americans With Disabilities Act of 1990

(42 U.S.C. §12101, *et seq.*)

(Against All Defendants)

73. Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

74. More than thirty years ago, the 101st United States Congress found that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination…in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. §12101(a).

75. In 1990 Congress also found that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals," but that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. §12101(a).

76. In passing the Americans with Disabilities Act of 1990, which was signed into law by President George H. W. Bush on July 26, 1990 (hereinafter the "ADA"), Congress stated as its purpose:

"It is the purpose of this Act

> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day to-day by people with disabilities."

42 USC §12101(b).

77. As part of the ADA, Congress passed "Title III – Public Accommodations and Services Operated by Private Entities" (42 U.S.C. §12181 *et seq*.). Title III of the ADA prohibits discrimination against any person "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

78. The specific prohibitions against discrimination include, *inter alia*, the following:

- 42 U.S.C. §12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

- 42 U.S.C. §12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such

modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

- 42 U.S.C. §12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

- 42 U.S.C. §12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

- 42 U.S.C. §12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

79. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

80. The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

81. The removal of each of the physical and policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of §12181 and §12182 of the ADA. Removal of each and every one of the architectural and/or policy barriers complained of herein was already required under California law. Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per §12183 of the ADA. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per

§12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

82. On information and belief, as of the date of Plaintiff's encounter at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. §12182 and §12183 of the ADA.

83. Defendants' actions continue to deny Plaintiff's rights to full and equal access and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of the ADA, 42 U.S.C. §12182.

84. Further, each and every violation of the Americans With Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code §51(f), §52, §54(c) and §54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code §54.3 and §55.

**SECOND CAUSE OF ACTION**

Violation of the Unruh Civil Rights Act

(California Civil Code §51, *et seq.*)

(Against All Defendants)

85. Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

86. California Civil Code §51 provides that physically disabled persons are free and equal citizens of the state, regardless of their medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, **disability, or medical condition** are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code §51(b) (emphasis added).

87. California Civil Code §51.5 also states, in part: "No business, establishment of any kind whatsoever shall discriminate against…any person in this state on account" of their disability.

88. California Civil Code §51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

89. California Civil Code §52 provides that the discrimination by Defendants against Plaintiff on the basis of her disability constitutes a violation of the general antidiscrimination provisions of §51 and §52.

90. Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code §52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

91. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code §51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code §52. Per Civil Code §51(f), "A violation of the right of any

individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

92. The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code §51 and §52.

93. The discriminatory denial of equal access to and use of the described public facilities caused Plaintiff difficulty, discomfort, and embarrassment.

94. As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code §51 and §52, and are responsible for statutory, compensatory and actual damages to Plaintiff, according to proof.

**PRAYER FOR RELIEF**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California.

The need for relief is critical because the civil rights at issue are paramount under the laws of the United States of America and the State of California.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the Subject Property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; and issue a

preliminary and permanent injunction pursuant to ADA §12188(a) and state law directing Defendants to provide facilities and services usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies; and to train Defendants' employees and agents how to recognize disabled persons and accommodate their rights and needs;

2. Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

3. Award to Plaintiff all appropriate damages, including but not limited to actual and statutory damages according to proof;

4. Award to Plaintiff all reasonable attorney fees, litigation expenses, and costs of this proceeding pursuant to 42 U.S.C §12205 and California Civil Code §52; and

5. Grant such other and further relief as this Court may deem just and proper.

DATED: August 31, 2026

VALENTI LAW APC

By: */s/ Matthew D. Valenti*

Matthew D. Valenti
Attorney for Plaintiff
Shonna Counter

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims and issues for which a jury is permitted.

DATED: August 31, 2026

VALENTI LAW APC

By: */s/ Matthew D. Valenti*

Matthew D. Valenti
Attorney for Plaintiff
Shonna Counter